UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

ANTHONY D. WILSON,          )
                                 )
      Plaintiff,         )
                                 )  Civil Action No. 5:08-324-JMH
v.                             )
                                 )
UNITED STATES AIR FORCE,    )
                                 )  **MEMORANDUM OPINION AND ORDER**
      Defendant.        )
                                 )

      **  **  **  **  **

     This matter is before the Court on Defendant's Motion for Summary Judgment[1] [Record No. 33]. Plaintiff filed a Response to the Motion for Summary Judgment [Record No. 46], and Defendant filed a timely Reply [Record No. 47]. Plaintiff also filed a Motion for Pretrial Conference [Record No. 48]. Defendant filed a Response [Record No. 50] and Plaintiff replied [Record No. 51]. These matters have been fully briefed and are now ripe for review. Plaintiff also filed a "Motion for (Partial) Summary Judgment" and Memorandum in Support thereof [Record No. 91] on January 20, 2011, as the undersigned was completing his review of Defendant's Motion for Summary Judgment. Despite the fact that Defendant has not had an opportunity to respond to Plaintiff's "Motion for (Partial) Summary Judgment," the Court is adequately advised and will review

---

     [1]    This is not a traditional Rule 56 motion for summary judgment. Rather, it is a procedural device to obtain the arguments and positions of the parties regarding the matters contained in the administrative record developed before the Air Force Board for Correction of Military Records ("AFBCMR").

this Motion, as well.

Plaintiff, pursuant to 10 U.S.C. § 1552 and the Administrative Procedures Act, appeals decisions rendered by the Air Force Board for Correction of Military Records ("AFBCMR" or the "Board") on May 6, 2006, and April 21, 2009.[2] Plaintiff argues that the AFBCMR's April 21, 2009, opinion, which was a reconsideration of it's May 6, 2006, opinion, was arbitrary and capricious because the AFBCMR failed to consider the Plaintiff's arguments regarding the removal of an Officer Performance Review ("OPR") from his record, as well as allegations of misconduct against his supervisors. Plaintiff has, however, failed to identify any procedural error that would require this Court to remand the matter to the AFBCMR nor has he identified any grounds upon which this Court could conclude that the decisions of the AFBCMR were not supported by substantial evidence and were, thus, arbitrary and capricious.

Primarily, Plaintiff argues that the "failure to even consider" the contents or filing of the referral or the OPR in the AFBCMR's April 21, 2009, decision on Plaintiff's second application

---

[2]    Plaintiff's causes of action under the "Little Tucker Act", 28 U.S.C. §1346, and the substantive rights forming the basis of his Little Tucker Act claim, the "Back Pay Act", 37 U.S.C. §206, and the "Military Pay Act", 5 U.S.C. §5596, were dismissed by the Court [Record No. 12] pursuant to Fed. R. Civ. P. 12 because Plaintiff admitted, and this Court agreed, that he was not qualified for relief for those claims. Upon review of Defendant's claimed exemptions from disclosure under the "Freedom of Information Act", 5 U.S.C. §552, this Court found that the exemptions applied and dismissed Plaintiff's claim under 5 U.S.C. §552. [Record No. 39].

make it arbitrary and capricious. As the Court explains in this Memorandum Opinion and Order, the AFBCMR clearly considered these issues as it reviewed the entire record, including the decision of the Evaluation Reports Appeal Board ("ERAB") and the administrative record before the ERAB, which dealt explicitly with these concerns, and declined to provide him relief. When Plaintiff's filings are read in their entirety, it is clear that he is asking this Court to revisit his case wholesale and to undermine the decisionmaking authority of the AFBCMR. This is not the errand before this Court, and the Court declines to pursue it. For the reasons which follow, Defendant's Motion for Summary Judgment [Record No. 33] shall be granted, and Plaintiff's Motion for Partial Summary Judgment [Record No. 91] shall be denied.

## I. FACTUAL BACKGROUND

The parties have laid out the full relevant history of Plaintiff's employment with the Connecticut Air National Guard, as well as his subsequent requests for relief to various entities, for this Court's consideration. The Court has been fully apprised of and has considered the relevant history presented by the parties, as well as the administrative record submitted to this Court.

Plaintiff became a Judge Advocate in the Connecticut Air National Guard in June 2001. He was assigned as a first lieutenant for the 103rd Fighter Wing, Bradley Air National Guard Base, East Granby, Connecticut. As of September 1, 2001, Plaintiff held the

position of deputy staff judge advocate for the unit. As deputy staff judge advocate, Plaintiff served as legal advisor to commanders, briefing legal aspects of deployments outside of the United States, preparing wills and powers of attorney, advising personnel concerning veterans' and reservists' legal rights, providing briefings to unit members and representing members of the Connecticut Air National Guard ("CTANG") in administrative discharge actions. (AR-I 22).

Between June of 2000 and March 2002, Plaintiff had several performance issues. First, he was unable to maintain his weight within required standards, which led to his participation in the Weight and Body Fat Measurement Program. (AR-II, 295-299; AR-I, 3). Based on compliance with the standards, he was removed from the weight program in 2002. (AR-II, 295-299; AR-I, 3). Second, Plaintiff's government credit card was suspended because he failed to pay an outstanding bill for more than ninety days. (AR-II 34-5). The bill was paid promptly upon receipt of payment on Plaintiff's travel voucher. (AR-II 30, 34-5). Third, Plaintiff asserted that an illness caused him to miss a mandatory diversity training session. (AR-II 30, 34-5). Plaintiff's Supervisor, Staff Judge Advocate, Major ("Maj.") Robert Statchen[3], did not deem

---

[3] Several individuals herein have been promoted since 2001. However, for ease of reference, all individuals will be referred to according to their titles at the time of their relevant interaction with Plaintiff.

Plaintiff to have a reasonable excuse for his absence. (AR-II, 30).

Plaintiff's problems continued in March, 2002, when Plaintiff was assigned to defend two clients regarding adverse administrative actions. Maj. Statchen acted as opposing counsel in the adverse administrative actions based on Air Force policy and custom. Both clients requested new counsel during the early stages of the proceedings. These two clients were the first to whom Plaintiff had been assigned. Clients in this situation rarely ask for new counsel (AR-II, 29), and the basis for clients requests and Plaintiff's reactions were a source of concern for Maj. Statchen.

When asked why she was requesting new counsel, the first client told Maj. Statchen that Plaintiff impressed upon her that his position was very important to him because he did not have a civilian job and that he felt that his "pay was being delayed because the 'Command' was not pleased" that Plaintiff was representing a "negative or unpopular cause." (AR-II, 29, as stated in "Letter of Counseling"). The client requested new counsel because she felt that Plaintiff's concern for his pay and job security would negatively impact his ability to represent her. (AR-II, 29).

The second client requested new counsel because she did not feel that Plaintiff was adequately representing her interests and Plaintiff had not met with her in person. (AR-II, 29). After

requesting new counsel, this client saw Plaintiff and recognized him. Plaintiff and his friend had come in to her place of employment when she was working as an exotic dancer. (AR-II, 29). According to the client, Plaintiff's friend heckled her and made statements that indicated to Maj. Statchen that Plaintiff may have revealed confidential information learned during the course of his representation to a third party. (AR-II, 29). Plaintiff denies going to his client's place of employment with a friend (AR-II, 33).

Plaintiff refused to answer Maj. Statchen's questions regarding the former clients' statements, citing client confidentiality.[4] Plaintiff stated that he "would not lose sleep" over the loss of the clients, which indicated to Maj. Statchen that Plaintiff lacked "concern, compassion and professional responsibility." (AR-II, 29). Maj. Statchen considered Plaintiff's conduct unacceptable and stated that Plaintiff's actions were "tantamount to destroying the fabric of this unit." (AR-II, 30). Maj. Statchen issued a Letter of Counseling to Plaintiff, and Plaintiff responded, taking issue with Maj. Statchen's characterizations and conclusions. (AR-I 31-36).

Plaintiff challenged, and continues to challenge, *inter alia*,

---

[4] Plaintiff alleges that Maj. Statchen "demanded" that Plaintiff describe why two clients had requested alternate counsel and "a description of what potential defenses Plaintiff had discussed with said clients." [Record No. 91, p. 3].

the propriety of the Air Force's practice of a requiring supervising officers to act as opposing counsel in administrative hearings and whether it was proper for Maj. Statchen to request that Plaintiff respond to his former clients' allegations regarding Plaintiff's representation. Plaintiff filed an ethics complaint with the Connecticut Bar Association regarding the client confidentiality issue.

Subsequently, Plaintiff alleges he reached an agreement on May 8, 2002, with the Wing Commander, Colonel ("Col.") Daniel Scace, the next officer in Plaintiff's chain of command (AR-I 22, 26), requiring Plaintiff's attendance at the Judge Advocate Staff Officer Course at Maxwell Air Force Base as well as the withdrawal of a pending ethics complaint with the Connecticut Bar Association and an action pending with the Air National Guard Inspector General. Plaintiff's unverified memorandum, dated May 8, 2002, which purports to memorialize the agreement, states that:

> withdrawal of these matters should in no way be construed as an admission on my part; but rather a belief that even if I prove certain matters, there is little chance a harmonious work situation will ever be realized (and that the time and effort expended could be better utilized).

(AR-II 40). In exchange Plaintiff alleges that, with the approval of Col. Scace, Maj. Statchen agreed not to provide a poor OPR for Plaintiff, not to pursue Plaintiff's administrative discharge, and that Plaintiff would meet with the next scheduled promotion board. (AR-I 3, AR-II 45, 52). However, there is no evidence of this

agreement in the record beyond Plaintiff's conclusory assertions in his memorandum.

Plaintiff did not meet with the next scheduled promotion board, as allegedly agreed. Maj. Statchen issued a Record of Individual Counseling on October 19, 2002, which described three separate unacceptable demonstrations of disrespect toward Maj. Statchen. (AR-II 48). First, Plaintiff left a required Unit Training Assembly 1 hour early without seeking approval from Maj. Statchen as required. (AR-II 48). Second, when Maj. Scace extended his hand for a handshake to welcome Plaintiff back after the Judge Advocate Staff Officer Course, Plaintiff refused to shake his hand in front of another officer and two enlisted paralegals. (AR-II 48). Additionally, Plaintiff walked into an office where Maj. Statchen was involved in a discussion with two officers and asked Maj. Statchen in a "disrespectful tone," "with your gracious permission can I please go to lunch?" (AR-II 48). Maj. Statchen conducted a counseling session with Plaintiff based on Plaintiff's actions. (AR-II 48).

As a supervisor, Maj. Statchen was responsible for completing a performance assessment for Plaintiff, known as an Officer Performance Report ("OPR"). A Referral OPR[5] was drafted by Maj.

_____

[5] A "referral" OPR is so named because a certain comment or rating causes an OPR to be "referred" to the ratee, or the subject of the OPR, in this case the Plaintiff, for comment prior to being finalized pursuant to Air Force Instruction 36-2406 (April 15, 2005).

Statchen on January 13, 2003, indicating that Plaintiff did not meet standards in the categories of professional qualities, organizational skills, and judgment and decisions during the rating period. (AR-I 22-4). As the direct supervisor, Maj. Statchen served as the "rater" of the OPR and completed the majority of the document. Col. Scace, serving as the "Additional Rater," completed an additional section at the end of the OPR on or about April 13, 2003. (AR-I 22-3).

The OPR noted that Plaintiff failed to "maintain the confidence of clients and commanders as to client representation" and that, when confronted on this issue, Plaintiff demonstrated insubordination and a lack of understanding as to his role. (AR-I 23). The OPR also noted that counseling by "numerous senior officers" was not successful. (AR-I 23). In his role as an "additional rater," Col. Scace also provided an overall assessment in the OPR. (AR-I 23). He noted that Plaintiff developed a conflict with his supervisor due to Maj. Statchen's "attempts to correct minor performance issues." (AR-I 23). Col. Scace further commented that Plaintiff "took on a defensive posture" instead of striving "for understanding, improvement or teamwork." (AR-I 23). Col. Scace also mentioned that "[d]iscussions with all unit JAGs and several commanders revealed doubt in [Plaintiff's] skills and abilities to serve clients effectively," and therefore Maj. Statchen's conclusions were supported. (AR-I 24). Col. Scace

noted that his conclusions were based on meetings with Maj. Statchen and Plaintiff, as well as review of the written documentation. (AR-I 24). Plaintiff was able to review and respond to the Referral OPR, which he did on July 13, 2003. Maj. Gen. Cugno, after reviewing Plaintiff's statement, noted that the "evaluator comments throughout the evaluation describe a pattern or practice of behavior incompatible with acceptable standards of personal or professional conduct, judgment or character." (AR-11 14). Maj. Gen. Cugno further stated that Plaintiff's "[r]ebuttal comments manifest [Plaintiff's] lack of professional qualities and judgment, underscoring evaluator's referral." (AR-11 14).

Col. Scace recommended Plaintiff for administrative discharge, a process that began on or about January 14, 2004. (AR-II 312-315). The Letter of Notification advising Plaintiff of Col. Scace's recommendation cited: (1) serious or recurring conduct that raises doubts regarding fitness for retention in the Air Force; (2) failure to show acceptable qualities of leadership; and (3) failure to conform to prescribed standard of military deportment. (AR-II 312).

On or about May 4, 2004, Plaintiff voluntarily resigned from the CTANG, citing his desire to relocate to Kentucky. (AR-II 197). Plaintiff also cited his desire to transfer to the Individual Ready Reserve. (AR-II 197). The Adjutant General characterized Plaintiff's service as "honorable" and accepted Plaintiff's

resignation on May 10, 2004.  (AR-II 198).

Throughout the history of this matter Plaintiff has filed a plethora of complaints, applications, and requests for redress to various boards, individuals and members of Congress, alleging discrimination, wrongful termination, and questions regarding ethics, which are too numerous to detail herein. Plaintiff's requests for relief have, at times, contained bitter and combative language, often offering scathing personal attacks on his former supervisors and superior officers.[6]  Plaintiff sought relief from every possible avenue, and sometimes applied numerous times to the same board or agency requesting similar relief.  However, Plaintiff's personal crusade has been largely fruitless.  Plaintiff has never received any definitive holding or opinion indicating that Maj. Statchen and other superior officers acted unethically or contrary to policy or that they discriminated against Plaintiff in any way.  Among the various applications, complaints and other requests for relief, Plaintiff filed two applications for relief with the AFBCMR, which are the subject of the action before the Court.[7]

---

[6]    In fact, Plaintiff leveled a gratuitous personal attack against opposing counsel in the current matter. [*see* Record No. 48].

[7]    The AFBCMR, described in more detail below, "provides aggrieved members of the military a means to correct an error or remove an injustice from their military records, restore lost rank." *Udell v. Adjutant General's Dept. of State of Texas*, 878 F.Supp. 991, 995 (S.D.Tx 1995).  Additionally, aggrieved military

## A. First decision by the AFBCMR, dated May 8, 2006

Plaintiff's first application requested that his date of rank for the reserve grade of captain should be adjusted to March 2002 instead of December 9, 2003 due to the "discriminatory and professionally unethical actions" of Maj. Statchen, "improper actions" of his chain of command, and "improper instigation" of administrative action against him by Maj. Statchen. (AR-I 7). Plaintiff also attacked the propriety of his referral OPR, but argued that he was entitled to the requested relief was not dependent on the status of the referral OPR. After a request for clarification from the AFBCMR, Plaintiff stated that the relief requested was that the AFBCMR change his date of rank for the reserve grade of captain to March 2002 from December 9, 2003. (AR-I 3, 18).

The AFBCMR requested advisory opinions from subject matter experts, as provided for by the regulations governing such proceedings. *See* 32 C.F.R. §865.4(a)(1). The first advisory opinion, which was adopted and incorporated by the AFBCMR, addressed the referral OPR. Lt. Col. Marconi drafted the response, dated September 12, 2005, in which he reviewed the facts leading to

---

service members may recover "for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits ... if, as a result of correcting a record...the amount is found to be due the claimant on account of his service." *Id.* (quoting 10 U.S.C. § 1552(c) and (d))(*citing Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367 (1983); *Holdiness v. Stroud*, 808 F.2d 417, 426 (5th Cir 1987))

the negative referral OPR, the basis for his determination that the OPR was justified, and why he felt that the ethics decision by TJAG was valid. (AR-I 11-12). The advisory opinion pointed out that the referral process was properly executed, and the negative comments were supported by Maj. Statchen's narrative evaluation and the separate detailed endorsement provided by Col. Scace. The advisory opinion also noted the "coarse, bitter personal attacks" within Plaintiff's correspondence as corroboration for Col. Scace and Maj. Statchen's descriptions of Plaintiff's insubordination. (AR-I 11-12, 19).

Lt. Col. Marconi concluded his comments, however, by stating that, at a minimum, Plaintiff failed to exhaust his administrative remedies because he failed to appeal the referral OPR to the Air Force Evaluation Reports Appeal Board ("ERAB"). (AR-I 12). The ERAB evaluates appeals, or requests, "to correct evaluation reports and to correct substantiated errors or injustices" in evaluation reports. AFI 36-2401. If an Air Force member is not satisfied with the ERAB's decision, he "can apply" to the AFBCMR. AFI 36-2401 §3.6.2. Thus, according to Lt. Col. Marconi, his application to the AFBCMR should have been denied for failure to exhaust his administrative remedies. At the time, Plaintiff argued that appeal to the ERAB was not required in his situation, thus, he had exhausted his administrative remedies and his arguments regarding the referral OPR were ripe for consideration. (AR-I 16-17). The

AFBCMR agreed with Plaintiff and determined that he had exhausted his administrative remedies. (AR-I 5). The AFBCMR then turned to the merits of Plaintiff's challenges to the OPR and rejected his argument. The AFBCMR adopted and incorporated the advisory opinion by Lt. Col. Marconi, therefore, did not modify or void the referral OPR.

The second advisory opinion addressed only the promotion issue. (AR-I 13). It noted the difference between State Guard action in submitting an officer for a vacancy promotion within the state system, and action at the federal level whereby an officer who has not been promoted at the state level is considered for mandatory promotion at the federal level. (AR-I 13). Plaintiff was not submitted by state officials for a vacancy promotion. (AR-I 13). He was, however, considered and selected for promotion at the mandatory federal board, constituted under the Reserve Officer Personnel Management Act. The advisory opinion noted that state officials were under no obligation to submit Plaintiff for a vacancy promotion because state officials maintain discretion to submit officers for promotion who have demonstrated high potential and exceptional abilities. (AR-I 10-13). After considering Plaintiff's response to the advisory opinions, the Board concluded there was insufficient evidence of any agreement to promote Plaintiff and relied upon the discretion available to state officials in the matter to conclude that Plaintiff's request for

retroactive promotion should be denied. (AR-I 5).

In the AFBCMR decision of May 8, 2006, the Board wrote, in
relevant part, "… we agree with the opinions and recommendations of
the Air National Guard offices of primary responsibility and adopt
their rationale expressed as the basis for our decision that the
applicant has failed to sustain his burden of having suffered
either an error or injustice." (AR I – 5). The AFBCMR ultimately
concluded that "insufficient evidence has been presented to
demonstrate the existence of error or injustice." (AR-I 5).

**B. Second decision by the AFBCMR, dated April 21, 2009**

After the AFBCMR denied Plaintiff's first request, Plaintiff
appealed his referral OPR to the ERAB[8] prior to filing his second
application with the AFBCMR. The ERAB Application recited the same
arguments that Plaintiff presented in his first AFBCMR application,
as well as to numerous boards and other authorities throughout the
record. Plaintiff's July 20, 2006, appeal of the referral OPR to
the ERAB was denied on or about October 3, 2006, because the ERAB
was "not convinced that the original report was unjust or wrong."
(AR-II 17).

Plaintiff again applied to the AFBCMR on or about November 19,
2007, requesting a reconsideration of the first application. (AR-

---

[8] The only item submitted to the ERAB that had not been
previously filed with the AFBCMR in the first application was a
June 7, 2006, letter drafted by Plaintiff requesting action on
several ethical issues.

II 6).  Accordingly, the AFBCMR treated the second application as a request for reconsideration of the first application and appealing the ERAB decision.  (AR-II 2).  Plaintiff presented substantial documentation with his second application that had not been presented to the AFBCMR with his first application.[9]

In the second application, Plaintiff again requested that his promotion to the rank of captain be backdated to March 2002 and that he be promoted to major and lieutenant colonel at the earliest possible date after March 1, 2002.  He further requested that he be reinstated to an Air National Guard unit near his residence.

The AFBCMR's April 21, 2009, decision stated that "[a]fter again reviewing this application and the evidence provided in support of [Plaintiff's] appeal, we remain unpersuaded that the applicant's DOR should be backdated to March 2002."  (AR-II 3).

Similarly to the first decision, the Board noted that, at a minimum, Plaintiff's commander was required to nominate him to be considered for a position vacancy promotion.  The Board found that Plaintiff's commander had never agreed to submit him for a position vacancy or agreed to backdate his DOR upon successful completion of the weight management program.  The AFBCMR also concluded that it

---

[9]    Plaintiff admits that the vast majority of the voluminous materials submitted in support of his second application were available at the time of the first application but he chose not to submit the materials at that time.  (AR-II 3). Review of the record reveals that the additional materials contain documents created after the first application to the AFBCMR.  However, the record does not reveal any newly discovered relevant evidence.

16

did not have the authority to reinstate Plaintiff to the Air National Guard.  The AFBCMR decision did not adopt and incorporate the first decision, and, unlike the first decision, it did not adopt or incorporate the advisory opinions.  However, the first decision, advisory opinions, evidence offered and the ERAB decision were reviewed and considered by the AFBCMR in reaching its conclusion.

## II.  DISCUSSION

Plaintiff argues that the AFBCMR failed to consider "an important aspect of the problem" that Plaintiff presented to it in the Second Application to the AFBCMR[10]. [Record No. 46 at 2]. First, Plaintiff argues that the AFBCMR failed to adequately consider that his second application was an appeal of the ERAB decision, and, therefore, it was arbitrary and capricious. Second, Plaintiff argues that it was improper for the AFBCMR to remain silent on the related ethics and policy issues, which had previously been raised before the ERAB and other entities, such as whether it was procedurally permissible for supervising officers to participate in the OPR process while the supervising JAG officer was opposing counsel, and/or whether it was impermissible for a superior JAG to take adverse action against a subordinate JAG officer who asserts

_____

[10]    Plaintiff does not directly attack the first decision, but since the second opinion is a reconsideration of the first decision and necessarily relies on the rulings therein, both are addressed.

client confidentiality. These were important aspects of Plaintiff's argument to the AFBCMR, he argues, because removal of the referral OPR from his record may have an effect on the his date of rank. Plaintiff's Motion for Partial Summary Judgment expands on these arguments and suggests that this Court revisit the issues before the AFBCMR, as well as issues not presented to the AFBCMR, de novo. Plaintiff further argues that his substantive due process rights were violated.

For the reasons that follow, the Court finds that the AFBCMR considered all necessary aspects of the application and its decision was supported by substantial evidence. Additionally, the Court finds that the Plaintiff's claim for a violation of his substantive due process rights has not been properly presented for consideration by this Court, nor has he articulated a cognizable violation of his due process rights in his Motion for Summary Judgment [Record No. 91], so any attempt to amend his complaint would be futile.

## A.    The Air Force Board for Correction of Military Records

The "Secretary of a military department may correct any military record.. [t]o correct an error or remove an injustice." 10 U.S.C. § 1552.  The Secretary acts though Boards for Correction of Military Records composed of civilian members appointed by the Secretary.  10 U.S.C. § 1552.  Each military department operates its own board pursuant to separate regulations.

18

The type of military record subject to correction by the AFBCMR is not limited by statute. *Porter v. U.S.*, 163 F.3d 1304, 1322 (C.A.Fed. 1998). Thus, any "military record," defined as "a document or other record that pertains to (1) an individual member or former member of the armed forces..." may be the subject of an application by a member of the miliary. 10 U.S.C. §1552(g).

In making its determination, the AFBCMR is required to make certain findings, to wit:

(1) Whether the provisions of the Military Whistleblowers Protection Act apply to the application. . . .

(2) Whether the application was timely filed and, if not, whether the applicant has demonstrated that it would be in the interest of justice to excuse the untimely filing.

. . .

(3) Whether the applicant has exhausted all available and effective administrative remedies.

. . .

(4) Whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief.

(5) In Military Whistleblowers Protection Act cases only, whether to recommend to the Secretary of the Air Force that disciplinary or administrative action be taken against any Air Force official whom the Board finds to have committed an act of reprisal against the applicant.

32 C.F.R. §865.4(h)[11].

## B.   Standard of Review

Applicants seeking relief from a military corrections board are bound by that board's determination unless the applicant can demonstrate that the Board's determination was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Covill v. United States*, 959 F.2d 58, 62-3 (6th Cir. 1992); *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998); *Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003); *Myers v. United States*, 50 Fed. Cl. 674, 688 (2001); *Baker v. Schlesinger*, 523 F.2d 1031, 1035 (6th Cir. 1975). An agency decision is arbitrary and capricious if the agency "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency

---

[11]    The Court notes that the regulation does not require that the AFBCMR detail the rationale for its decision with a great deal of specificity.   By contrast, other military arms require a more descriptive written opinion. For instance, the regulation governing the Board of Correction of Naval Records provides that "[t]he brief statement of the grounds for denial shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge." 32 C.F.R. §723.3(e)(4).

expertise." *Kentucky Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008)(quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644 (2007); *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Substantial evidence means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Massa v. Dep't of Defense*, 815 F.2d 69, 72 (Fed. Cir. 1987) (quoting *Consol. Edison Co. v. Labor Bd.*, 305 U.S. 197, 229 (1938)).

Plaintiff can only meet his substantial burden by presenting "cogent and convincing evidence" that the Board's decision was in error. *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973), cert. denied, 414 U.S. 1032 (1973); *Myers v. U.S.,* 50 Fed.Cl. 674, 689 (2001). "In determining whether an agency action violates the APA, the court must determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *O'Rourke v. Dept. of the Air Force*, No. 3:04cv7228, 2005 WL 3088611, *3 (N.D. Ohio November 16, 2005)(citing *Maryland Dep't of Human Resources v. U.S. Dep't of Agric.*, 976 F.2d 1462 (4th Cir. 1992)).

"It should be noted that in the military context, courts have

generally adopted an 'unusually deferential' standard upon reviewing actions of the Secretary in a § 1552 proceeding." *Id.* (citing *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C.Cir. 1989)). Findings by the AFBCMR are entitled to great weight. *Baker v. Schlesinger*, 523 F.2d 1031, 1036-7 (6th Cir. 1975).

**C. The AFBCMR considered the ERAB decision and all arguments presented by Plaintiff; its decision was supported by substantial evidence and, thus, was not arbitrary or capricious.**

Plaintiff argues that the AFBCMR failed to consider his second application an appeal of the ERAB decision as requested and, therefore, the AFBCMR's April 21, 2009, decision is arbitrary and capricious. The Air Force asserts that the record before the Court establishes that the AFBCMR considered the ERAB decision and other arguments raised by Plaintiff. This Court agrees with the Air Force and will grant summary judgment in its favor.

Plaintiff's arguments as presented to this Court, while opaque, have clarified what he less artfully argued to the AFBCMR. Simply stated, Plaintiff argues that the referral OPR should be removed from his record, whether because it is void due to ethical policy reasons, or because of procedural issues with the referral OPR.[12] Plaintiff also argues that the AFBCMR should determine what

---

[12] Specifically, Plaintiff argues that it "is impermissible for a supervising JAG officer to take adverse action... regarding proceedings in which the supervisor is opposing counsel," that the referral OPR was not supported with permissible commentary and that

effect, if any, the removal of the OPR would have on his promotion during the relevant time frame, in addition to his argument that he should have been promoted during the relevant time frame, even with the OPR in place.[13] Defendant argues that the first decision and the ERAB decision are part and parcel of the AFBCMR's decision regarding the second application, and, therefore, the AFBCMR's decision is not silent regarding the propriety of the referral OPR.

An administrative agency's decision is not confined to the four corners of the final decision but, instead, may draw from subordinate documents to articulate its rationale or, as in this case, where the agency's rationale was previously stated and the agency is merely confirming its prior holding. *Cf. Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003) (noting that when Board of Immigration Appeals summarily affirms underlying Immigration Judge decision, Immigration Judge decision is subjected to review under the arbitrary and capricious standard); *Gilaj v. Gonzalez*, 408 F.3d 275, 282-283 (6th Cir. 2005) (holding that court will include examination of underlying opinion of Immigration Judge when assessing, under arbitrary and capricious standard, subsequent final decision Board of Immigration Appeals when latter decision

_____

Adjutant General Maj. Gen. Cugno did not have the opportunity to observe Plaintiff during the ratings period.

[13] Plaintiff fails to address how the OPR, which was not entered into his record until long after March 2002, affected the decision not to nominate him for the March 2002 promotion board.

refers to the Immigration Judge decision and incorporates reasoning thereof). Thus, the final agency decision may incorporate and draw from a subordinate decision, even if it does not explicitly adopt and incorporate the document, thus making the subordinate decision's rationale and conclusions part and parcel of the final decision subject to review under the arbitrary and capricious standard. *Id.*

While the AFBCMR's opinion may not be perfectly structured, the decision and the supporting rationale are easily discernable. Courts may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.*, 463 U.S. 29, 44 (1983)(citing *Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 286 (1974)). See also *Camp v. Pitts*, 411 U.S. 138, 142-143 (1973).

The AFBCMR "review[ed] [Plaintiff's] application and the evidence provided in support of his appeal" and remained "unpersuaded that [Plaintiff's] DOR should be backdated to March 2002." (AR-II, 3). The AFBCMR reviewed the voluminous materials presented by Plaintiff for reconsideration, despite the absence of newly discovered relevant facts, and summarily confirmed that Plaintiff was not entitled to the relief requested. The application and evidence comprised all of Plaintiff's arguments, including his arguments before the ERAB regarding the impropriety

of the referral OPR, and the AFBCMR rejected them.

The first decision clearly adopted and incorporated the advisory opinions, and their rationale, with respect to the propriety of the referral OPR. While the AFBCMR's April 21, 2009, decision did not specifically reference the ERAB decision, such specific reference was not necessary. Nor is it meaningful as Plaintiff would have the Court believe, that the AFBCMR did not enumerate the various policy arguments raised by Plaintiff regarding the propriety of the OPR process under the circumstances. These arguments were incorporated as part of the review of the ERAB appeal and record but were also raised as separate arguments in the first application to the AFBCMR and, indeed, throughout the record. Plaintiff's arguments regarding the referral OPR and his DOR had already been considered and rejected in the record before the AFBCMR. There was no need to restate the discussion and conclusions regarding the referral OPR in the second decision by the AFBCMR, wherein it reached the same conclusion that had been reached before. It is clear from the record that the AFBCMR followed its own procedures in rendering its decision on the Plaintiff's first application, as well as with respect to the application for reconsideration and appeal of the ERAB decision.

Decisions of the AFBCMR are entitled to great deference by this Court. *Baker*, 523 F.2d at 1036-7. Performance reviews, such as the type at issue in the case *sub judice*, are "presumed to be

administratively correct and to represent the considered opinions and objective judgment of the rating officials at the time of preparation." *Cone v. Caldera*, 223 F.3d 789, 792 (D.C. Cir. 2000)(internal quotations omitted). "An officer seeking a correction must prove clearly and convincingly that the presumption of regularity in the preparation of administrative records should not apply, and that action is warranted to correct a material error, inaccuracy, or injustice." *Id. at* 792-3 (citations omitted); see *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C.Cir.1997) (noting "strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith") (internal quotations omitted). Plaintiff has failed to do so. Plaintiff neglects to cite any authority for his argument in his Motion for Summary Judgment that a less deferential standard should be applied.[14]

Moreover, there is a dearth of evidence in the record

---

[14] Plaintiff argues that the standard to be applied is that "evaluation comments relating to opposed matters are forbidden while evaluation comments relating to non-opposed matters are highly suspect." [Record 91 at 26]. Notwithstanding his failure to offer any precedent applying this standard, which is a sweeping contradiction of established precedent, Plaintiff presumably argues for this standard based on his interpretation of *Blassingame v. Sec'y of the Navy,* 866 F.2d 556 (2nd Cir. 1989). Specifically, Plaintiff argues that this case mandates that the Air Force's alleged failure to investigate or address certain issues requires that all of these issues be resolved in his favor by this Court. While the Court is not convinced that *Blassingame* stands for the proposition Plaintiff states, the facts *sub judice* are easily distinguishable, and this Court declines to apply *Blassingame* herein.

supporting Plaintiff's arguments. Even assuming this Court were to remand the matter so that the AFBCMR could more precisely detail Plaintiff's numerous and overlapping arguments, there is no basis in the record suggesting that the AFBCMR would reach a different result. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir.2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)); see *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed.Appx. 171, 173 (6th Cir.2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'")(quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969))); See also *Precaj v. Holder*, 376 Fed. Appx. 553. 559-60 (6th Cir 2010). The AFBCMR as well as the ERAB and numerous other departments and authorities have reviewed and rejected Plaintiff's multitudinous requests for relief, and, by all appearances, have done so on solid ground. Plaintiff is required to meet a particularly high burden to warrant the removal or correction of an OPR, and there is no evidence that he would be able to meet this high burden based on the evidence in the record.

For the foregoing reasons, and noting the considerable deference that this Court affords the AFBCMR's decision, the high

burden placed on Plaintiff and the paucity of evidence supporting Plaintiff's arguments, this Court grants the Defendant's Motion for Summary Judgment and denies the Plaintiff's Motion for Summary Judgment.

**D. Plaintiff's remaining arguments.**

Plaintiff argues, for the first time, in his Motion for Summary Judgment that Defendant violated Plaintiff's 5th and 14th Amendment substantive due process rights by taking adverse action against him on a basis that infringes upon his constitutionally protected interests. Specifically, he alleges that he had a constitutionally protected right to refuse to convey information to his superior officer so long as he invoked attorney-client privilege. Plaintiff argues that his claim for a constitutional violation is cognizable as part of a claim under 5 U.S.C. 702 because the APA allows for review of an agency action that is contrary to the laws of the United States.

However, Plaintiff's claim that his constitutional rights were violated is not properly before this Court. Plaintiff admits he did not articulate a claim for a due process violation in his Complaint [Record No. 2], Amended Complaint [Record No. 90], or Supplemental Complaint [Record No. 32].[15] Any effort to amend

_____

[15]    While Plaintiff's Complaint does reference an alleged violation of his constitutional rights [Record No. 2 at ¶¶ 1, 63], the alleged constitutional violation averred in the Complaint is entirely distinct from Plaintiff's argument in his Motion for Partial Summary Judgment [Record No. 91].

Plaintiff's complaint to add this cause of action would be futile because it could not withstand a motion to dismiss. *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21 (6th Cir. 1980).

First, Plaintiff failed to argue any violation of the 5th or 14th amendment in his application to the AFBCMR. Thus, he waived this argument, and cannot raise it for the first time before this tribunal. "A reviewing court may not consider arguments that were not previously raised before an administrative agency under the doctrine of issue exhaustion or the administrative waiver doctrine." *LeBlanc v. E.P.A.*, 310 Fed.Appx 770, 776 (6th Cir. 2009); *see also U.S. v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice")

Second, Plaintiff's claim would fail because he cannot demonstrate a constitutional right that was impacted by any of Defendant's actions. Plaintiff admits that he is not vested with a constitutionally protected property right in his military rank or position. [Record No. 91 at 16-7]. Nonetheless, Plaintiff argues, based on *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), that the government may not deny a benefit, here, adversely affecting his

rank and benefits, on a basis that infringes upon his constitutionally protected interests. Specifically Plaintiff alleges that the government adversely affected his rank and benefits "due to his protected choice not to breach client confidentiality or attorney-client privilege," which he characterizes as a fundamental right. [Record No. 91 at 17]. Plaintiff does not rely on any precedent for the proposition that the attorney-client privilege is a constitutionally protected right. While Plaintiff correctly states that the attorney-client privilege is a fundamental privilege in our legal system, Plaintiff fails to articulate any constitutional right personal to an attorney under these circumstances. Thus, Plaintiff's argument fails.

Plaintiff also asked this Court to rule on a hodgepodge of ethical issues, Air Force policy and judicial procedure and review. For instance, Plaintiff requests a ruling on whether the military's failure to investigate a matter effects a service member's claim or burden of proof required in litigation. [Record No. 46 at 23]. As noted above, however, the Court's scope of review in these matter is limited to the determination of whether the AFBCMR's decision was arbitrary or capricious. This Court's role, based on the complaint before it, is to determine whether the Air Force followed its own rules, not to promulgate new rules or change the Air

Force's longstanding interpretation of those rules.[16]  Accordingly, this Court declines to address these additional matters.

## IV. Motion for Pretrial Conference

Plaintiff requests a pretrial conference regarding Defendant's Motion for Summary Judgment [Record No. 48].  The Court has reviewed the pleadings and is adequately advised with respect to the matter.  Accordingly, the request shall be denied.

---

[16]     As the United States Supreme Court noted in *Chappell:*

The need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice, is too obvious to require extensive discussion; no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting. In the civilian life of a democracy many command few; in the military, however, this is reversed, for military necessity makes demands on its personnel without counterpart in civilian life... The Court has often noted the peculiar and special relationship of the soldier to his superiors, and has acknowledged that the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty.... This becomes imperative in combat, but conduct in combat inevitably reflects the training that precedes combat; for that reason, centuries of experience has developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns. Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment.

*Chappell v. Wallace*, 462 U.S. 296, 300 (1983)(internal citations and quotations omitted).

**V.   CONCLUSION**

Accordingly, for the reasons stated above, **IT IS ORDERED:**

(1) That the Defendant's Motion for Summary Judgment [Record No. 33] is **GRANTED**; and

(2) That the Plaintiff's Motion for Summary Judgment [Record No. 91] is **DENIED**; and

(3) Plaintiff's Motion for Pretrial Conference [Record No. 48] is **DENIED**.

This the 28th day of January, 2011.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge